IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DARIA D. LEONARD,              )
                               )
          Plaintiff,           )
                               )
     v.                        )          1:11CV307
                               )
WAKE FOREST UNIVERSITY,        )
                               )
          Defendant.           )

## MEMORANDUM OPINION AND ORDER

Presently before this court is Defendant's Motion to Dismiss (Doc. 5). Defendant has filed a memorandum in support of its motion (Doc. 6), Plaintiff has filed a response (Doc. 10), and Defendant has filed a reply (Doc. 12). This matter is now ripe for resolution, and for the reasons stated herein, Defendant's Motion to Dismiss (Doc. 5) will be deferred to summary judgment or trial pursuant to Federal Rule of Civil Procedure 12(i).

I.   BACKGROUND

Plaintiff, Daria D. Leonard,[1] has brought a suit against Defendant Wake Forest University alleging wrongful discharge in violation of North Carolina public policy. Plaintiff began

---

[1] Defendant states in its motion to dismiss that Plaintiff's name is "Darla D. Leonard" and is incorrectly identified in the Complaint as "Daria D. Leonard." Plaintiff has not responded as to her correct name. The court will refer to Plaintiff as "Daria" for purposes of this order.

working in the Department of Advancement Services at Wake Forest University in 2001.[2] (Complaint ("Compl.") (Doc. 1) at 1.[3])  She continued working in that department until August 1, 2008, at which time she was transferred to the Office of the Registrar at the Babcock School of Management.  (Id. at 2.)  Plaintiff received positive performance reviews throughout her employment with Defendant.  (Id. at 1-2.)  In September 2009, Plaintiff informed her supervisor, Rhonda Hirtzel, that she was pregnant.  (Id. at 2.)  Shortly thereafter, Ms. Hirtzel sent two emails to Plaintiff correcting her work.  (Id.)  Ms. Hirtzel then presented Plaintiff with a formal write-up describing her alleged poor performance.  (Id.)  Plaintiff was subsequently fired on November 11, 2009.  (Id.)  Plaintiff claims that her termination by Defendant "violates the public policy of North Carolina set forth in N.C.G.S. § 143-422.2 and therefore constitutes a wrongful discharge of Plaintiff by Defendant."  (Id. at 3.)

Defendant, in its brief supporting its Motion to Dismiss, does not challenge the sufficiency of the facts alleged by Plaintiff.  (See Def.'s Br. in Supp. of Mot. to Dismiss (Doc. 6)

---

[2] All facts alleged by Plaintiff are taken as true for purposes of this order.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

[3] All citations in this order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

at 1-2.)  Instead, Defendant argues that Plaintiff has "failed to state a claim for wrongful discharge against public policy upon which relief may be granted [because there has been no] express policy statement concerning pregnancy discrimination under North Carolina law."  (Id. at 3.)

**II.  LEGAL STANDARD**

Defendant has moved to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  When analyzing a Rule 12(b)(6) motion, the pleading setting forth the claim must be "liberally construed" in the light most favorable to the nonmoving party, and allegations made therein are taken as true.  Jenkins, 395 U.S. at 421.  A complaint is sufficient if it will give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  See Bolding v. Holshouser, 575 F.2d 461, 464 (4th Cir. 1978).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. V. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if the plaintiff provides enough factual content to enable the court to reasonably infer that the defendant is liable for the misconduct alleged.  Id.  This plausibility requirement "is not akin to a

-3-

'probability requirement,' but it asks for more than a sheer possibility that [the] defendant has acted unlawfully." Id. Thus, while the complaint need not contain detailed factual allegations, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true. Id. (citation omitted). "Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege any facts [that] set forth a claim." Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004).

**III. ANALYSIS**

Defendant has not challenged the factual sufficiency of Plaintiff's complaint, but instead argues that this court must dismiss this action because North Carolina has no clearly expressed public policy against discrimination based upon pregnancy. No North Carolina or federal court has directly decided this issue. See Blount v. Carlson Hotels, Inc., Civil No. 3:11-CV-452-MOC-DSC, 2012 WL 1021735, at *8 (W.D.N.C. Mar. 1, 2012) ("No North Carolina court has addressed whether this

-4-

statutory provision encompasses a claim of pregnancy discrimination.").[4]

North Carolina adheres to the doctrine of employment at will. Under this doctrine, ordinarily, an employee may be discharged for any reason or for no reason. Coman v. Thomas Mfg. Co., 325 N.C. 172, 175, 381 S.E.2d 445, 446 (1989). North Carolina courts have, however, recognized a limited exception to the employment at will doctrine when an employee is terminated in violation of public policy. "[T]his exception is applicable where (1) the public policy of North Carolina is clearly expressed within [North Carolina's] general statutes or state constitution, or (2) potential harm to the public is created by

---

[4] In Blount v. Carlson Hotels, Inc., the magistrate judge recommended that the plaintiff's wrongful discharge claim based on pregnancy discrimination be allowed to survive the motion to dismiss against all but one of the named defendants. 2012 WL 1021735, at *8. In making this recommendation, the magistrate judge did not specifically find that discrimination based upon pregnancy was prohibited by North Carolina law, but instead assumed for purposes of the present stage of that litigation that North Carolina courts would recognize this exception to the employment at will doctrine. See id. Other courts have not reached the legal issue, instead finding that the plaintiffs in those cases had failed to plead sufficient factual content to bring a pregnancy discrimination claim under Title VII. See Sweeney v. MARC Global, Inc., Civil No. 3:06cv182, 2008 WL 313618, at *11 (W.D.N.C. Feb. 4, 2008) ("Because the Court has determined that the Plaintiff has failed to establish facts to support her claim under Title VII that the Defendant terminated her due to her pregnancy, Plaintiff's pregnancy discrimination claim under § 143-422.2 – to the extent that such a claim even exists – must also be dismissed.").

defendant's unlawful actions." McDonnell v. Guilford County Tradewind Airlines, Inc., 194 N.C. App. 674, 678, 670 S.E.2d 302, 306, disc. rev. denied, 363 N.C. 128, 675 S.E.2d 657 (2009).

In this case, Plaintiff claims that N.C. Gen. Stat. § 143-422.2 expresses a public policy against discrimination based upon pregnancy. That statute reads in full:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.
>
> It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment foments domestic strife and unrest, deprives the State of the fullest utilization of its capacities for advancement and development, and substantially and adversely affects the interests of employees, employers, and the public in general.

N.C. Gen. Stat. § 143-422.2 was passed by the North Carolina General Assembly in 1977 to provide the same protections as federal law under Title VII. See Phillips v. J.P. Stevens & Co., 827 F. Supp. 349, 353 (M.D.N.C. 1993)("The public policy of North Carolina expressed in N.C.G.S. § 143-422.1 et seq. is essentially identical to the public policy articulated in Title VII."); North Carolina Dep't of Corr. v. Gibson, 308 N.C. 131, 141, 301 S.E.2d 78, 85 (1983)("The ultimate purpose of . . . G.S. 143-422.2, and Title VII . . . is the same; that is, the elimination of discriminatory practices in employment."). While

the statute does not create a private right of action, see <u>McNeil v. Scotland County</u>, 213 F. Supp. 2d 559, 570 (M.D.N.C. 2002), a plaintiff can bring a common law claim for wrongful discharge based on a violation of the public policy expressed in N.C. Gen. Stat. § 143-422.2. See <u>Phillips</u>, 827 F. Supp. at 352-53.

One year prior to the General Assembly's passage of N.C. Gen. Stat. § 143-422.2, the United States Supreme Court held that a disabilities benefits plan that failed to cover pregnancy-related disabilities did not violate Title VII. <u>Gen. Elec. Co. v. Gilbert</u>, 429 U.S. 125, 146 (1976). In reaching this conclusion, the Supreme Court noted:

> Normal pregnancy is an objectively identifiable physical condition with unique characteristics. Absent a showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other, lawmakers are constitutionally free to include or exclude pregnancy from the coverage of legislation such as this on any reasonable basis, just as with respect to any other physical condition.

<u>Id.</u> at 134-35. The court thus concluded that Title VII was not violated by pregnancy-based-discrimination, unless "distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other." (<u>Id.</u> at 135 (quoting <u>Geduldig v. Aiello</u>, 417 U.S. 484, 496-97 n.20 (1974)). Plaintiff claims that "the North Carolina Assembly [sic] intended sex discrimination to include pregnancy discrimination in the same way Congress intended 'sex

-7-

discrimination' in Title VII to include pregnancy discrimination," (Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 10) at 2-3), but the Supreme Court held in <u>Gilbert</u> that sex discrimination under Title VII did <u>not</u> include discrimination based on pregnancy. Therefore, when the legislature passed N.C. Gen. Stat. § 143-422.2, it modeled that legislation based on a federal statute that the Supreme Court had recently found not to apply to discrimination of a similar nature as that claimed by Plaintiff in this case.[5]

Two years after the Supreme Court decided <u>Gilbert</u>, Congress amended Title VII to explicitly state that the prohibition against discrimination "based on sex" includes discrimination based on pregnancy. <u>See</u> 42 U.S.C. § 2000e(k) ("The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . ."); <u>AT&T Corp. v. Hulteen</u>, 556 U.S. 701 (2009) ("In response to the ruling in <u>General Elec. Co. v. Gilbert</u> . . . that [] differential

---

[5] Plaintiff has not claimed that Defendant's alleged pregnancy-based discrimination was a "mere pretext[] designed to effect an invidious discrimination against" her because of her sex. That is, Plaintiff does not allege that she was fired because she is a female; she alleges that she was fired because of her pregnancy.

-8-

treatment of pregnancy leave was not sex-based discrimination prohibited by Title VII of the Civil Rights Act of 1964, Congress added the Pregnancy Discrimination Act (PDA) to Title VII in 1978 to make it 'clear that it is discriminatory to treat pregnancy-related conditions less favorably than other medical conditions.'") (citation omitted).

The General Assembly has not made a similar amendment to N.C. Gen. Stat. § 143-422.2. Plaintiff relies on <u>Rankin v. Mattamy Homes Corp.</u> in opposing Defendant's Motion to Dismiss. (<u>See</u> Pl.'s Resp. to Def.'s Mot. to Dismiss (Doc. 10) at 3 (<u>citing</u> <u>Rankin v. Mattamy Homes Corporation</u>, 2010 U.S. Dist. Lexis 88552, at \*5-11 (M.D.N.C. Aug. 26, 2010))). In <u>Rankin</u>, a magistrate judge of this district recognized that "[t]he Pregnancy Discrimination Act amended Title VII to add that [discrimination] 'because of sex' includes pregnancy." <u>Id.</u> at \*5. The amendment was made, however, in 1978, a year after North Carolina adopted N.C. Gen. Stat. § 143-422.2, and the North Carolina statute has never been amended to state that "'because of sex' includes pregnancy."

Further, "North Carolina courts have limited the expansion of the public policy exception," <u>Jackson v. Blue Dolphin Commc'ns of N.C., L.L.C.</u>, 226 F. Supp. 2d 785, 793 (W.D.N.C. 2002), and federal courts in North Carolina have been hesitant to expand the exception in the absence of state court precedent. <u>See</u> <u>Buser v.</u>

-9-

S. Food Serv., Inc., 73 F. Supp. 2d 556, 566 (M.D.N.C. 1999); Schuler v. Branch Banking & Trust Co., Civil No. 1:08cv378, 2009 WL 3261665, at *5 (W.D.N.C. Oct. 8, 2009)("The Middle District of North Carolina has held through a series of decisions that, in the absence of any express guidance from the North Carolina courts or legislature, federal courts should not expand the public policy exception to the at-will employment doctrine to include FMLA violations."); Sabrowski v. Albani-Bayeux, Inc., No. 1:02CV00728, 2003 WL 23018827, at *9 (M.D.N.C. Dec. 19, 2003).

On the other hand, in North Carolina Dep't of Corr. v. Gibson, 308 N.C. 131, 136 (1983), the Supreme Court of North Carolina stated: "we look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases" (emphasis added). Although the court made this statement while adopting evidentiary standards from federal cases, notably, the court also held that it would look to federal decisions for "principles of law" to be applied in discrimination cases. It is an open question whether the court intended "principles of law" to capture Congress' decision to amend Title VII with the Pregnancy Discrimination Act. The court's opinion was issued in 1983, five years after Congress' amendment to Title VII, and the court likely knew of Congress' amendment when it stated that it would look to "federal decisions" for guidance in discrimination cases. However, the

-10-

court also specifically stated that it would look to "federal decisions" for guidance and did not say whether it would consider any Congressional amendments to Title VII to also apply to North Carolina's anti-discrimination law. Finally, the Supreme Court of North Carolina could simply disagree with the United States Supreme Court's holding in Gilbert and find that pregnancy-based-discrimination does constitute discrimination based on sex even without legislative amendment.[6]

For these reasons, while discriminating against an employee based upon pregnancy raises serious concerns for this court – and is most certainly prohibited under federal law,[7] see 42 U.S.C. § 2000e(k) – in the absence of settled state court precedent or a clearly expressed public policy in either the general statutes or constitution of North Carolina, this court is hesitant to expand the public policy exception to North Carolina's employment-at-

---

[6] Because Gilbert was interpreting a federal statute, Gilbert would not be binding precedent and the North Carolina Supreme Court would be free to find that the General Assembly intended for sex-based-discrimination to include discrimination based on pregnancy, despite the fact that N.C. Gen. Stat. § 143-422.2 was apparently modeled after Title VII. The North Carolina Supreme Court could also distinguish Gilbert by finding that it only addressed differential treatment of pregnancy leave and not the more severe pregnancy-based-discrimination alleged in this case.

[7] In its reply, Defendant notes that if Plaintiff had brought a claim under Title VII, "such [a] claim would be procedurally barred and outside the administrative time periods prescribed by the statute." (Reply Br. in Supp. of Def.'s Mot. to Dismiss (Doc. 12) at 2 n.2).

-11-

will doctrine.  However, because of the important policy
considerations involved, and because of precedent stating that
the North Carolina Supreme Court looks to principals of law from
federal decisions for guidance in discrimination cases, this
court is also hesitant to hold that a state law claim for
pregnancy discrimination does not exist.  This court therefore
finds that before it determines an important principal state law,
this case should be allowed to proceed through discovery so that
this court may determine whether such a decision will be
necessary or whether the case should ultimately be decided on
alternate grounds.  At the end of the discovery period, the
parties will be required to address all relevant issues of law.
Those issues are to include, but will not necessarily be limited
to, the question of whether discrimination based on pregnancy is
"clearly expressed" within North Carolina's constitution or
general statutes.  See McDonnell, 194 N.C. App. at 678, 670
S.E.2d at 306.

## IV. CONCLUSION

For the reasons stated herein, it is **HEREBY ORDERED** that
Defendant's Motion to Dismiss Plaintiff's Complaint (Doc. 5) is
**DEFERRED TO SUMMARY JUDGMENT OR TRIAL PURSUANT TO FEDERAL RULE OF
CIVIL PROCEDURE 12(i).**

This the 2nd day of July, 2012.

                              _____
                                  United States District Judge